UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CENTRAL REXALL DRUGS, INC.** | * | **CIVIL ACTION** |
| **v.** | * | **NUMBER: 17-2724** |
| **RAQUEL C. BONO, DIRECTOR DEFENSE HEALTH AGENCY** | * | **JUDGE BARBIER** |
| | * | **MAG. JUDGE KNOWLES** |

* * *

**MEMORANDUM IN SUPPORT OF
FEDEAL DEFENDANT'S MOTION TO DISMISS**

**MAY IT PLEASE THE COURT:**

INTRODUCTION AND OVERVIEW

Prior to answering the captioned lawsuit, the Defendant is interposing this motion to dismiss on the grounds that the Court lacks the jurisdiction to entertain the cause of action asserted in the complaint. This motion will demonstrate that Plaintiff's cause of action is not viable and that the complaint should be dismissed in its entirety.

The complaint filed herein by Central Rexall Drugs, Inc., a compounding pharmacy, (hereinafter "Plaintiff" or "Central Rexall"), alleges that the Director of the Defense Health Agency, Raquel Bono ("Defendant" or "the Director"), purportedly violated federal medical insurance regulations when she refused to terminate Plaintiff's temporary suspension of claims processing after eighteen months. As explained *infra*, Plaintiff's claim for mandamus relief against Defendant in her official capacity fails to meet the legal standard for imposition of the extraordinary mandamus remedy. Plaintiff's request for mandamus relief is jurisdictionally

- 1 -

barred because Plaintiff cannot demonstrate that it has a clear right to relief, that Defendant owes it a clear, non-discretionary duty, and that no other adequate relief is available. This Court should accordingly dismiss Plaintiff's complaint, as explained in greater detail *infra*.

## STATUTORY BACKGROUND

The Department of Defense ("DoD") is charged with providing medical and dental care for members of the military and their families. *See* 10 U.S.C. § 1073. In order to fulfill this duty, the DoD established the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"). 32 C.F.R. § 199.1. The regulations for CHAMPUS and its subsidiary program, TRICARE, are found in 32 C.F.R. Part 199. Both programs are managed by the Defense Health Agency ("DHA"). 32 C.F.R. § 199.2.

In managing TRICARE, the DHA has available to it several provisions governing the administrative remedies available in case of fraud or abuse of the CHAMPUS/TRICARE program by a provider. S*ee* 32 C.F.R. § 199.9. Pharmacies are classified as a provider under the CHAMPUS regulations. 32 C.F.R. § 199.6(d)(3). The Director of the DHA or a designee can temporarily suspend CHAMPUS claims processing for a provider when there is a reasonable belief that the provider has submitted claims involving practices that may constitute fraud or abuse. 32 C.F.R § 199.9(h)(1)(ii). When the DHA decides to invoke a temporary suspension, it is required to issue a written notice to the suspended provider in which the suspected fraudulent acts are described sufficiently enough to put the provider on notice without disclosing the Government's evidence. 32 C.F.R. § 199(h)(1)(iii). After receiving the notice, the provider has thirty days to either submit a written argument in opposition to the suspension or a written request to present the argument in person. 32 C.F.R. § 199(h)(1)(iii)(B). If the suspended provider submits an

argument in opposition to the suspension, the DHA shall issue a suspending official's decision which modifies, terminates, or leaves in force the suspension of claims processing. 32 C.F.R. § 199(h)(1)(iv). A temporary suspension of claims processing can last up to eighteen months, unless an administrative or legal proceeding is initiated. 32 C.F.R. § 199.9 (h)(1)(vi)(A). If a legal proceeding is initiated, the DHA may choose to stay any administrative action against the suspended provider pending a final disposition by the Department of Justice. 32 C.F.R. § 199.9 (j)(1)-(2).

## EXAMINATION OF THE PLEADINGS

Central Rexall's complaint arises out of a temporary suspension of claims processing invoked by the DHA in response to Plaintiff's suspected fraudulent activities. Record Doc. 1 (hereinafter "Complaint") at ¶ 8. Plaintiff was a compounding pharmacy whom the DHA believes "dispensed compound drugs to TRICARE beneficiaries based upon prescriptions written by physicians whom [the DHA] concluded may not have established a physician-patient relationship with beneficiaries necessary to write valid prescriptions." *See* Exhibit 1 to Complaint. Based on these allegations, the DHA issued a notice to Plaintiff on April 24, 2015 of its temporary suspension of claims processing. Complaint at ¶ 8.

On May 20, 2015, Plaintiff submitted a written argument to the DHA opposing the temporary suspension. *See* Exhibit 2 to Complaint. Plaintiff also sought and presented its argument in person to the DHA's Office of Program Integrity. Record Doc. 1-6 at p. 21. However, the DHA found that neither of these arguments raised a genuine dispute of material facts challenging the basis for the claims suspension. *Id.* On December 2, 2015, the DHA sent Plaintiff a suspending official's decision in which the DHA informed Plaintiff that its suspension

- 3 -

was still in effect and that Plaintiff and its associated physicians were being audited. *Id.* at p. 22.

The DHA's audit of Plaintiff revealed that over $37 million in claims submitted by Plaintiff had "no substantiating medical claims submitted to support that a valid doctor/patient relationship existed." *See* Exhibit 10 to Complaint at p. 2. Further, one of Central Rexall's associated physicians, Dr. William Elder-Quintana, was arrested on October 12, 2016 after being indicted for fraudulently prescribing compounded drugs to TRICARE beneficiaries. *Id.* The DHA also found that a large volume of the compounding prescriptions submitted by Plaintiff were based on prescriptions written by Dr. Elder-Quintana. *Id.* at p. 3. Plaintiff was made aware of both of these facts in an October 21, 2016 letter in which the DHA informed Central Rexall that its temporary suspension would continue until the completion of Dr. Elder-Quintana's prosecution by the Department of Justice. *Id.* at 2-3.

## RELEVANT LEGAL STANDARDS

A federal district court must dismiss any claims over which the court lacks subject matter jurisdiction. Fed.R.Civ. P. Rule 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

A motion to dismiss for lack of jurisdiction may be decided by the district court on one of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or, (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming*, *supra* (citing *Barrera-Montenegro v. United States*, 74

F.3d 657, 659 (5th Cir. 1996). The existence of disputed material facts will not preclude the court from evaluation of the merits of the jurisdictional claims, and the court may look beyond the pleadings to affidavits and exhibits to determine whether it has jurisdiction over a dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (holding jurisdictional issues are for the court, not the jury to decide, regardless of whether they are based on legal or factual determinations). In determining whether it is properly vested with subject matter jurisdiction, the district court is "'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

Title 28, United States Code, Section 1361 gives district courts original jurisdiction where a plaintiff sues to compel a federal agency to perform a duty owed to the plaintiff. *Helfgott v. United States*, 891 F.Supp. 327, 330-31 (S.D. Miss. 1994). This so-called "mandamus jurisdiction" is only valid when all three of the following elements exist: "(1) the plaintiff has a clear right to relief, (2) the defendant a clear duty to act, and (3) no other adequate remedy exists." *Wolcott v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011). If a court has mandamus jurisdiction, the plaintiff must still demonstrate "extraordinary circumstances justifying [mandamus] relief." *Helfgott*, 891 F.Supp. at 331. The Fifth Circuit views the existence of mandamus jurisdiction as an issue of subject matter jurisdiction. *Wolcott*, 635 F.3d at 766

ARGUMENT

I.   THE COURT LACKS SUBJECT MATTER OVER THE CLAIMS IN THE COMPLAINT AT BAR BECAUSE MANDAMUS JURISDICTION DOES NOT EXIST.

Defendant respectfully submits that the Court lacks subject matter jurisdiction to require the Director to terminate her temporary suspension of claims processing and payments to Plaintiff. First, this Court's jurisdiction is limited and there is a presumption that subject matter jurisdiction does not exist. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1991). It is a well-settled rule that a court must dismiss any case where jurisdiction has not been granted by statute or the Constitution. *Stockman v. Federal Election Com'n*, 138 F.3d 144, 151 (5th Cir. 1998). The party asserting federal court jurisdiction bears the burden of demonstrating that fact. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Ramming*, *supra*; *Kirkland Masonry, Inc. v. Commissioner*, 614 F.2d 532, 533 (5th Cir. 1980) (per curiam). As the United States Supreme Court has repeatedly held, "[w]e presume that federal courts lack jurisdiction 'unless the contrary appears affirmatively from the record.'" *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quoting *King Iron Bridge & Mfg. Co. v. Cty. of Otoe*, 120 U.S. 225 (1887)); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 179 (1936).

Under 28 U.S.C. § 1361, the Court has jurisdiction over writs of mandamus. 28 U.S.C. § 1361 (2015). However, such jurisdiction is proper only if "the plaintiff demonstrates a clear right to relief, the defendant a clear duty to act, and no other adequate remedy exists." *Helfgott*, 891 F. Supp. at 331. In the complaint at bar, Central Rexall does not demonstrate that it is clearly entitled to relief, nor that Defendant has a clear duty to act. Further, an adequate administrative remedy exists for Plaintiff's claims.

### A. PLAINTIFF DOES NOT DEMONSTRATE A CLEAR RIGHT TO RELIEF

Plaintiff claims to be entitled to relief because Defendant purportedly violated its own regulations in not lifting the temporary suspension of Plaintiff after eighteen months. Complaint at ¶¶ 7-8. The regulations state that, "A suspension of claims processing shall be for a temporary period pending the completion of investigation and any ensuing legal or administrative proceedings." 32 C.F.R. § 199.9(h)(1)(vi). Such a suspension may not extend beyond eighteen months, "unless legal or administrative proceedings have been initiated during that period." 32 C.F.R. § 199.9(h)(1)(vi)(A). While the regulations make clear that the initiation of legal or administrative proceedings are necessary to justify a suspension lasting longer than eighteen months, the regulations do not dictate that such proceedings must be made directly against the suspended party. *Id.*

The CHAMPUS regulations state that, "in general, temporary suspension of claims processing may be invoked to protect the interests of the Government for a period reasonably necessary to complete investigation or appropriate criminal, civil, and administrative proceedings." 32 C.F.R. § 199.9(h)(1)(i). Suspension is appropriate "when adequate evidence exists to determine that a provider . . . is submitting fraudulent or false claims *or claims involving practices that may be fraud or abuse* . . . ." 32 C.F.R. § 199.9(h)(1)(ii) (emphasis added). Read together, these provisions show an intent to give the DHA the power to suspend the processing of possibly fraudulent claims, whether or not the source of that fraud is the suspended party itself.

The Director invoked this provision when, on December 2, 2015, she advised Central Rexall that "[the] temporary suspension will continue pending the completion of the review and auditing of the pharmacy and associated physicians and/or any ensuing legal or administrative

proceedings." Record Doc. 1-6, at pp. 21-22. Defendant did not state that its investigation and possible proceedings were limited to Plaintiff, but made clear that Plaintiff's suspension was also dependent on the investigation of and ensuing proceedings against associated physicians. As Central Rexall admits, one of its associated physicians, Dr. Elder-Quintana, is currently the focus of a United States Department of Justice prosecution. Complaint, at ¶ 17. In fact, legal proceedings were initiated against Dr. Elder-Quintana via an indictment on October 12, 2016, less than eighteen months after Plaintiff was given initial notice of its temporary suspension. Record Doc. 1-8, at pp. 4-5. Therefore, because a legal proceeding involving the fraudulent claims for which Plaintiff was initially suspended was initiated less than eighteen months after Plaintiff was given notice of its suspension, the Director was not and is not required to end Plaintiff's suspension. 32 C.F.R. § 199.9(h)(1)(vi)(A). Thus, mandamus jurisdiction does not exist because Plaintiff does not have a real right to relief. *Helfgott*, 891 F. Supp. at 331.

### B. DEFENDANT DOES NOT HAVE A CLEAR DUTY TO ACT.

For mandamus jurisdiction to exist, the plaintiff must demonstrate that the defendant had a clear, non-discretionary duty to act. *Wolcott*, 635 F.3d at 768. In the complaint at bar, Plaintiff alleges that the Director has a clear duty not to extend its temporary suspension of Central Rexall past eighteen months. Complaint at ¶ 21. However, this argument fails because the CHAMPUS regulations clearly give the Director discretion in determining the length of Plaintiff's suspension.[1] Additionally, Defendant has a discretionary duty to suspend any administrative actions against

---

[1] 32 C.F.R. § 199.9(h)(1)(i) states in pertinent part that:
> In general, temporary suspension of claims processing may be invoked to protect the interests of the Government for a period reasonably necessary to complete investigation or appropriate criminal, civil, and administrative proceedings . . . Once it has been determined appropriate to end the temporary suspension of claims processing, CHAMPUS claims which were the subject of the suspension . . . will be processed to completion and payment . . .

- 8 -

Central Rexall pending Department of Justice action. 32 C.F.R. § 199.9(j)(1). [2] Because Defendant's decision to extend Plaintiff's suspension past eighteen months is discretionary, mandamus jurisdiction does not exist. *Wolcott*, 635 F.3d at 768.

The Fifth Circuit has held that, "mandamus does not create or expand duties, but merely enforces clear, non-discretionary duties already in existence." *Wolcott*, *supra*. For example, in *Helfgott v. United States*, the Southern District of Mississippi held that the Department of Veterans Affairs' decision to withhold its final determination of the plaintiff's disability claim pending the results of ongoing litigation was discretionary and not subject to mandamus jurisdiction. 891 F. Supp. at 331-32. In that case, the plaintiff filed a writ of mandamus asking the court to order the Department of Veterans Affairs not to defer its final determination of the plaintiff's claim until pending litigation was decided. *Id.* at 330. The district court, in holding that such a complaint is not proper under mandamus jurisdiction, stated, "The length of time determined to be appropriate for an administrative adjudication is clearly a discretionary, not a ministerial, decision of the agency, and mandamus cannot be used to regulate the exercise of discretion." *Id.* at 331. Further, the court noted that, "the plaintiff has not identified any authority to suggest that an agency may not, in the exercise of its discretion, suspend actions or adjudications which may be affected by ongoing litigation, nor is the Court aware that any such authority exists." *Id.*

Similarly, in this case, the Director's determination as to the length of Plaintiff's suspension is a discretionary act that is not subject to mandamus jurisdiction. The CHAMPUS regulations state that, "temporary suspension of claims processing may be invoked . . . *for a period reasonably*

---

[2] 32 C.F.R. § 199.9(j)(1) states, "All or any administrative action may be suspended by the Director, OCHAMPUS, or a designee, pending action in the case by the Department of Defense — Inspector General, Defense Criminal Investigative Service, or the Department of Justice (including the responsible United States Attorney."

*necessary* to complete investigation or appropriate criminal, civil, and administrative proceedings." 32 C.F.R. § 199.9(h)(1)(i)(emphasis added). Further, "once it has been *determined appropriate* to end the temporary suspension of claims processing, CHAMPUS claims which were the subject of suspension . . . will be processed to completion and payment." *Id.* (emphasis added). Together, these provisions indicate that the Director has the discretion to extend Central Rexall's suspension for a period reasonably necessary to investigate the fraudulent claims associated with Plaintiff and that the suspension will end when Defendant determines that its termination is appropriate. Just as the Department of Veterans Affairs' determination of the appropriate length of time necessary to process a claim in *Helfgott* was not a ministerial act subject to mandamus regulation, Defendant's decision to extend Plaintiff's suspension past eighteen months is a discretionary act that does not fall under mandamus jurisdiction. *Helfgott*, 891 F.Supp. at 331-32.

Additionally, Defendant has the discretion to suspend any administrative action against Plaintiff until the Department of Justice completes its prosecution of Dr. Elder-Quintana. The CHAMPUS regulations state, "All or any administrative action may be suspended by the Director, CHAMPUS, or a designee, pending action in the case by the . . . Department of Justice (including the responsible United States Attorney)."[3] 32 C.F.R. § 199.9(j)(1). Such a suspension of administrative action is analogous to the Department of Veterans Affairs' decision to withhold final determination of a claim pending ongoing litigation in *Helfgott*. 891 F.Supp. at 329. Thus, Defendant's decision to suspend any further administrative action against Plaintiff pending Dr.

---

[3] As Plaintiff is aware, the United States Attorney's Office for the E.D. La. is conducting a civil investigation for potential False Claims Act violation(s). 31 U.S.C. § 3729, *et seq*.

Elder-Quintana's prosecution is the very suspension of adjudication affected by ongoing litigation which the *Helfgott* court deemed to be a discretionary action. *Id.* at 331. For these reasons, the Director's decision to defer administrative action against Central Rexall pending prosecution of one of Plaintiff's associated physicians is a discretionary act not subject to mandamus jurisdiction.

### C.  OTHER ADEQUATE RELIEF IS AVAILABLE

Mandamus jurisdiction for Plaintiff's claims alleged in the complaint at bar does not exist because other adequate relief is available to Plaintiff through the administrative remedies provided by the CHAMPUS regulations. *See* 32 C.F.R. § 199.10. The Fifth Circuit has held that "mandamus does not supersede other remedies, but rather comes into play where there is a want of such remedies." *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969). Relief is considered adequate when it is "capable of affording full relief as to the very subject matter in question." *Id.* For example, in *Wolcott v. Sebelius*, *supra*, the Fifth Circuit declined to extend mandamus jurisdiction to the plaintiff's claim because he had failed to exhaust his administrative remedies under the Medicare Act. 635 F.3d at 773. In that case, the court specifically found that the plaintiff was required to appeal the initial determination made by a Medicare carrier through the appellate process set forth in the Medicare Act before mandamus could be issued. *Id.*

Additionally, adequate relief exists for Plaintiff's claim in the United States Court of Federal Claims. Title 28 U.S.C. § 1491(a)(1) vests jurisdiction in the Claims Court for "any claims against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department . . ." Thus, claims asserted against the United States based on CHAMPUS administrative decisions fall under the Claims Court's jurisdiction because they are founded on the Dependent's Medical Care Act, 10 U.S.C. §§ 1071-1110b, and the

CHAMPUS regulations. *Woods Psychiatric Inst. v. United States*, 20 Cl. Ct. 324, 330 (1990), *aff'd*, 925 F.2d 1454 (Fed. Cir. 1991). The Court of Federal Claims has also held that it has jurisdiction over CHAMPUS claims because they are "claim[s] for payment of benefits created by statute and payable from the national treasury." *Green Hosp. v. United States*, 23 Cl. Ct. 393, 399 (1991) (quoting *King v. United States*, 215 Ct. Cl. 876, 879 (1977)). Further, the Tucker Act gives the Claims Court sole jurisdiction over claims against the United States exceeding $10,000 and claims "founded upon any express or implied contract with the United States . . ." 28 U.S.C. § 1346(a)(2). Claims involving the misapplication of the CHAMPUS regulations have been viewed by courts as breach of contract claims against the United States. *See Trauma Serv. Grp. v. Keating,* 907 F.Supp. 110, 114 (E.D. Pa. 1995); *Holton v. Blue Cross and Blue Shield of South Carolina*, 56 F.Supp.2d. 1347, 1353 (M.D. Ala. 1999).

Likewise, the Fifth Circuit has held that a writ of mandamus should not be issued when a plaintiff presents a claim over which the United States Court of Federal Claims has jurisdiction. *Carter*, 411 F.2d at 774. In *Carter v. Seamans*, the Fifth Circuit reasoned that it would be improper for the district court to grant the plaintiff a writ of mandamus because plaintiff's claim exceeded $10,000. *Id.* The court of appeals, in holding that plaintiff had another avenue of adequate relief in the Court of Claims, reasoned, "Even the most cursory examination of the foregoing authorities evidences that not only is an adequate remedy available to Plaintiff in the Court of Claims, but also that that court has acquired considerable expertise in this type of litigation. This court would do well to defer to such expertise." *Id.*

In the case at bar, Plaintiff, like the plaintiff in *Wolcott* who did not exhaust his appellate options under the Medicare Act, has not gone through the appellate process described in the

CHAMPUS regulations. *Id.* In fact, the Director has not even made a final adverse determination against Central Rexall. Record Doc. 1-6, at pp. 21-22. Only when the Director has entered a final adverse determination against Plaintiff, will Plaintiff have the right to appeal the determination pursuant to 32 C.F.R § 199.10. Central Rexall was made aware of this fact in a December 22, 2016 letter in which Defendant stated, "At this time, there has been no final adverse determination and, accordingly, no issue ripe for appeal." Record Doc. 1-6, at pp. 21-22. Further, like the plaintiff in *Carter*, Central Rexall's claim exceeds $10,000 and, thus, falls within the Court of Claims' sole jurisdiction. *Carter*, 411 F.2d at 774; Complaint at ¶ 13. Central Rexall's claim is also a "claim for payment of benefits created by statute and payable from the national treasury" over which the Court of Federal Claims exercises jurisdiction. *Green Hosp.*, 23 Cl. Ct. at 399. Because Plaintiff's complaint presents an issue that will be subject to the appellate process under CHAMPUS regulations and involves a civil action exceeding $10,000, other adequate relief exists outside of mandamus and, therefore, an issuance of an order of mandamus is improper.

## II. PLAINTIFF DOES NOT DEMONSTRATE EXTRAORDINARY CIRCUMSTANCES REQUIRED FOR MANDAMUS RELIEF

Even assuming, *arguendo*, that Plaintiff can demonstrate that all three elements of mandamus jurisdiction exist, Plaintiff has not demonstrated that extraordinary circumstances exist to justify mandamus relief. The Fifth Circuit has observed that, "[i]t is hornbook law that mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." *Carter*, 411 F.2d at 774. While the court of appeals has not explicitly defined what makes a circumstance so extraordinary as to justify mandamus relief, the Southern District of Mississippi has indicated that a delay in administrative action must be exceedingly

unreasonable as to require a district court to issue mandamus. *Helfgott*, 891 F.Supp. at 327; *see also In re Monroe Commc'ns Corp.*, 840 F.2d 942, 945-46 (D.C. Cir. 1988) (holding that a five-year delay in agency action was not an extraordinary circumstance justifying mandamus relief). Indeed, the Western District of Louisiana similarly held that an administrative delay of almost four years was not an extraordinary circumstance worthy of an issue of mandamus. *Lundy v. United States*, 142 F.Supp.2d 776, 777-780 (W.D. La. 2001) (James, J.).

In the case at hand, Defendant's delay in administrative action against Plaintiff has been a little over two years. Complaint, ¶ 3. Such a delay is perfectly reasonable for a case involving a nation-wide fraud investigation by the Government.[4] Furthermore, Plaintiff ceased operations well before it filed the complaint the bar.[5] Nowhere has Plaintiff claimed that Defendant is solely responsible for the closing of its business nor has Plaintiff alleged that an issue of mandamus would suddenly make its business viable again. In short, even if mandamus jurisdiction exists for Plaintiff's claims, Plaintiff has not demonstrated extraordinary circumstances which would justify the court issuing mandamus.

---

[4] *Tampa Pharmacy Charged With Overbilling Military Health Program*, Wall Street Journal (July 5, 2017), https://www.wsj.com/articles/tampa-pharmacy-charged-with-overbilling-military-health-program-1499108462; *Ten Additional Defendants Charged in $100 Million TRICARE Fraud Scheme*, U.S. Dep't of Justice (Oct. 14, 2016), https://www.justice.gov/usao-ndtx/pr/ten-additional-defendants-charged-100-million-tricare-fraud-scheme; *25 Arrested for Fraud Related to TRICARE and Compound Drugs*, Health.mil (July 18, 2016), https://health.mil/News/Articles/2016/07/18/25-arrested-for-fraud-related-to-TRICARE-and-compound-drugs; *North Texas Men Indicted for Running Health Care Fraud Scheme That Caused TRICARE to Suffer More Than $65 Million Loss*, U.S. Dep't of Justice (Feb. 24, 2016), https://www.justice.gov/usao-ndtx/pr/north-texas-men-indicted-running-health-care-fraud-scheme-caused-tricare-suffer-more-65; .

[5] Central Rexall Facebook Page, https://www.facebook.com/CentralRexall/ (last visited June 27, 2017).

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, the Defendant prays that this motion to dismiss be **GRANTED** and that Plaintiff's complaint be **DISMISSED**.

> Respectfully submitted,
>
> DUANE A. EVANS
> ACTING UNITED STATES ATTORNEY
>
> *s/Glenn K. Schreiber*
> GLENN K. SCHREIBER
> Assistant United States Attorney
> 650 Poydras Street, Suite 1600
> New Orleans, Louisiana 70130
> Telephone: (504) 680-3093
> Telefax: (504) 680-3174
> glenn.schreiber@usdoj.gov