## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

CENTRAL REXALL DRUGS, INC.,

     Plaintiff,

v.

RAQUEL C. BONO,
Director, Defense Health Agency

     Defendant.

Case No. 2:17-cv-2724

## PLAINTIFF'S MEMORANDUM IN OPPOSITION OF
## DEFENDANT DHA'S MOTION TO DISMISS

Although perhaps a matter of first impression, the question presented in this case is straightforward: whether the Defense Health Agency ("DHA") is violating its own regulations in refusing to lift the "temporary" payment suspension it imposed against Central Rexall Drugs over two years ago. Those regulations are clear that "***in no event*** may a suspension extend beyond 18 months, unless legal or administrative proceedings have been initiated during that period." 32 C.F.R. § 199.9(h)(1)(vi)(A) (emphasis added). The "temporary" suspension at issue in this case was initiated in April 2015, over twenty-seven months ago. No legal or administrative proceeding was initiated against Central Rexall during that period, nor has one been initiated since. Nevertheless, DHA has continued to refuse to lift the suspension. Because the defendant has failed to carry out a nondiscretionary duty, a writ of mandamus is proper.

## I.   <u>FACTUAL BACKGROUND</u>

Pursuant to authority delegated to it by Congress, the Department of Defense ("DOD") established the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") in 1967. (Compl. ¶ 1.) CHAMPUS beneficiaries include retired armed forces personnel and dependents of both active and retired military personnel. *Id.* In 1995, the DOD established TRICARE, a managed health care program to administer health benefits to CHAMPUS beneficiaries. (*Id.*) DHA began managing TRICARE on October 1, 2013. (*Id.*)

Central Rexall had been in business since 1896 and was a fourth-generation, family-owned compounding pharmacy based in Hammond, Louisiana.[1] (*Id.* ¶ 2.) Central Rexall was a pioneer in the field of compounding and had been compounding medications for over forty years. (*Id.*) Central Rexall, as a healthcare provider, has had relationships with multiple private and public health care programs, including TRICARE. (*Id.* ¶ 3.)

In a notice dated April 24, 2015, over twenty-seven months ago, DHA informed Central Rexall that it was suspending claims processing and payment for all present and future claims pursuant to 32 C.F.R. § 199.9. (*Id.* ¶ 8.) DHA later clarified that the suspension was pursuant to 32 C.F.R. § 199.9(h), meaning it was (or

---

[1] The financial hardships caused by DHA's failure to process the claims worth more than $20 million have been devastating. Central Rexall has been forced to cease operation. (Compl. ¶ 14.)

was at least supposed to be) a temporary suspension.  (*Id.*, Ex. 6 at 20-21.)  Soon after receiving the notice, Central Rexall began efforts to resolve the matter with DHA, including sending multiple letters and emails, having multiple telephone conferences, and meeting in person with DHA's representatives in Colorado.  (*Id.* ¶ 15.)

On May 27, 2016, counsel for Central Rexall sent a letter to DHA outlining the history of this matter and demanding that, because more than twelve months[2] had passed since the date of the suspension notice and no apparent request for an extension had been made, DHA immediately terminate the temporary suspension pursuant to applicable federal regulations.  (*Id.*, Ex. 6.)

On September 16, 2016, counsel sent a letter to DHA, again outlining Central Rexall's history in the matter, and again demanding that DHA comply with its regulations and terminate the temporary suspension.  (*Id.*, Ex. 7.)  In a letter dated October 21, 2016, DHA informed Central Rexall that it was continuing the temporary suspension of claims processing and payment during the pendency of the prosecution of Dr. William Elder-Quintana.  (*Id.* ¶ 17.)  As discussed in more detail below, Dr.

---

[2] The regulations at issue state that at a temporary suspension may only last 12 months, after which the temporary suspension shall be terminated if no legal or administrative action has been initiated.  It further provides that the suspension can be extended by 6 months if the Government official responsible for the initiation of the legal or administrative action requests its extension.  But, ***"[i]n no event*** may a suspension extend beyond 18 months, unless legal or administrative proceedings have been initiated during that period."  32 C.F.R. § 199.9(h)(1)(vi)(A) (emphasis added).

Elder-Quintana's only connection with Central Rexall is that he was one of hundreds of physicians that sent prescriptions to Central Rexall per patient request. (*Id.*) Other than this tangential connection, he is in no way affiliated with Central Rexall.

The regulations at issue allow for temporary suspensions, but require that DHA bring an administrative or legal action within 18 months or else lift the suspension. 32 C.F.R. § 199.9(h)(1). That eighteen-month deadline expired in October 2016 and, to date, DHA has still not initiated any legal or administrative actions against Central Rexall. (Compl. ¶¶ 10-11.) Accordingly, DHA should be required to lift the suspension and begin processing payments to Central Rexall immediately. Unsurprisingly, there are no mechanisms within the CHAMPUS regulations to dispute the length of a temporary suspension lasting more than eighteen months, as a suspension of that length is explicitly prohibited by the rules (save for the commencement of an administrative or legal action). The regulations do provide for a hearing under 199.10, but that provision requires that the aggrieved party receive a "determination" from DHA, which Central Rexall has never received. 32 C.F.R. 199.10(a)(1)(i).

In order to make absolutely certain Central Rexall had no appeal rights under 199.10, on November 23, 2016, counsel submitted a request for an independent hearing with DHA pursuant to 32 C.F.R. § 199.10(d). (*Id.* ¶ 19.) In a letter dated December 22, 2016, DHA denied Central Rexall's request for a hearing pursuant to

32 C.F.R. § 199.10(d) on the basis that there was no appealable issue under 32 C.F.R. § 199.10(a)(6).  (*Id.* ¶ 19.)  In its letter denying Central Rexall's request for an administrative hearing, DHA asserted that there has been no final adverse determination made against Central Rexall.  (*Id.*, Ex. 11.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Standard

The standard of review for a facial challenge to a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6).  *Matter of the Complaint of Texas Petroleum Inv. Co. for Exoneration From or Limitation of Liab.*, No. CV 16-1590, 2016 WL 6876650, at *2 (E.D. La. Nov. 22, 2016).  In the Fifth Circuit, "[a] motion to dismiss under rule 12(b)(6) is viewed with disfavor and is rarely granted."  *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (citation and quotation omitted).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Express Lien, Inc. v. Nationwide Notice, Inc.*, No.

CV 16-2926, 2017 WL 1091252, at *1 (E.D. La. Mar. 23, 2017). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle [the] plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

**B.    Writ of Mandamus Standards**

The Writ of Mandamus statute states in full "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  "This Court has found mandamus jurisdiction exists if the action is an attempt to compel an officer or employee of the United States or its agencies to perform an allegedly nondiscretionary duty owed to the plaintiff." *Wolcott v. Sebelius*, 635 F.3d 757, 766 (5th Cir. 2011) (citations omitted) (hereinafter "*Wolcott I*").  *See also D&G Holdings, LLC v. Sylvia Mathews Burwell*, 156 F. Supp. 3d 798, 811-12 (W.D. La. 2016) ("[T]he Court has [subject matter] jurisdiction to issue a writ of mandamus if Plaintiff can make a sufficient showing that Defendants owe Plaintiff a nondiscretionary duty.").[3]

---

[3] The parties disagree as to what is required to establish jurisdiction.  DHA contends that subject matter jurisdiction is only proper if Central Rexall shows it fulfills the three elements of a writ.  (Def.'s Br. at 6 (citing *Helfgott v. United States*, 891 F. Supp. 327, 329 (S.D. Miss. 1994).)  Some circuits take this approach that the three elements to obtain a writ of mandamus are jurisdictional and therefore must be shown

To state a claim for a writ of mandamus a plaintiff must allege: (1) the plaintiff has a clear right to relief, (2) the defendant a clear duty to act, and (3) no other adequate remedy exists. *Wolcott I,* 635 F.3d at 768; *Akinmulero v. Holder*, 347 F. App'x 58, 61 (5th Cir. 2009). Once the petitioner has established the three elements, the court has discretion to grant a writ of mandamus. *Wolcott I,* 635 F.3d at 768 (citing *United States v. Denson,* 603 F.2d 1143, 1146 (5th Cir. 1979)).

## III.   ARGUMENT

DHA contends that subject matter jurisdiction does not exist, Central Rexall has not properly stated a claim for mandamus jurisdiction, and that extraordinary circumstances do not exist. As this brief will show, mandamus jurisdiction is appropriate and Central Rexall has stated a claim as to each of these elements.

### A.     Subject Matter Jurisdiction is Appropriate

This Court has subject matter jurisdiction over the dispute because Central Rexall's sole relief requested is an order compelling DHA to comply with a

---

to establish jurisdiction. *See*, *e.g.*, *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). But the Fifth Circuit has not adopted that requirement as *Wolcott v. Sebelius* makes clear. 497 F. App'x 400, 402-03 (5th Cir. 2012) ("*Wolcott II*"). Rather, in the Fifth Circuit, on a motion to dismiss a claim for mandamus relief there is a two-step process of first establishing jurisdiction and then determining whether the plaintiff has alleged the elements sufficient to state a claim.

In the case at hand, regardless of whether the elements are considered jurisdictional or not, Central Rexall meets both the requirements for jurisdiction and the elements of a writ of mandamus.

nondiscretionary duty owed to Central Rexall outlined in 32 C.F.R. § 199.9(h)(1)(vi). (*See* Compl. at 8-9.)

In *Wolcott I*, the Fifth Circuit examined five writ of mandamus claims for relief to determine whether it had subject matter jurisdiction. *Wolcott I,* 635 F.3d at 766. It found that subject matter jurisdiction existed for three of the counts "because the ultimate relief Wolcott seeks in each count is an order compelling the defendants to perform a nondiscretionary duty." *Id.* at 766. Those counts sought relief very similar to the relief sought by Central Rexall:

> Count I asks the district court to compel the defendants to process and pay claims in accordance with binding final administrative decisions ordering payment of these claims. Count II seeks an order to compel defendants to adhere to payment deadlines mandated in the Medicare Claims Processing Manual. Count IV seeks an order compelling the defendants to remove Wolcott from prepayment review as required by 42 C.F.R. § 421.505(a)(1).

*Id.* at 766. The Fifth Circuit rejected subject matter jurisdiction for the other two counts, which asked that the court prohibit the agency from denying certain claims finding that "the relief Wolcott seeks is not mandamus but rather declaratory judgment and injunctive relief." *Id.* at 767. "Both of these requests for relief would require the court to prohibit the defendants from acting in a certain manner in the future rather than compel the defendants to affirmatively perform a presently existing duty under the law." *Id.*; s*ee also D&G Holdings, LLC,* 156 F. Supp. 3d at 811-12

(declining subject matter jurisdiction over based on mandamus jurisdiction over claims for injunctive relief).

Here, Central Rexall is not requesting a declaratory judgment or injunctive relief. Central Rexall solely requests that the Court:

> issue a writ of mandamus to the Defendant requiring her to immediately terminate the temporary suspension of claims processing and payments to Central Rexall as required by 32 C.F.R. § 199.9(h)(1)(vi), and to begin processing and paying all claims due to Central Rexall forthwith and declare that the length of the temporary suspension of processing and payment of Central Rexall's claims exceeds the maximum length allowed by law.

(Compl. at 8-9.) Central Rexall does not in any way request that this Court adjudicate the merits of whether the claims should be paid, enjoin DHA in any fashion, or award it any damages. Rather, it seeks solely that the Court order DHA to comply with its own regulations, which require DHA to lift the suspension. This is nearly identical to the counts for relief that the Fifth Circuit held stated a claim in *Wolcott I,* 635 F.3d at 766. As explored below, the regulations at issue are plainly worded and impose nondiscretionary duties upon DHA. Thus, Central Rexall's complaint meets the jurisdictional grounds for mandamus relief.

### B.    Central Rexall has stated a Claim for Mandamus Relief

#### 1.    Central Rexall has a Clear Right to Relief and DHA has a Clear Duty to Act

Central Rexall meets the first two requirements for a writ of mandamus, as it has a clear right to relief and DHA has a clear duty to act. Mandamus is appropriate

where the "government officer owes the [plaintiff] a legal duty that is a specific, ministerial act, devoid of the exercise of judgment or discretion." *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997).

DHA's regulations as to the length of a temporary suspension are clear and allow for no exercise of judgment or discretion in that regard. Section 199.9(h)(1)(vi)(A) states in full:

> A suspension of claims processing shall be for a temporary period pending the completion of investigation and any ensuing legal or administrative proceedings, unless sooner terminated by the Director, OCHAMPUS, or a designee, or as provided in this subparagraph.
>
>> (A) If legal or administrative proceedings are not initiated within 12 months after the date of the suspension notice, the suspension shall be terminated unless the Government official responsible for initiation of the legal or administrative action requests its extension, in which case it may be extended for an additional 6 months. ***In no event may a suspension extend beyond 18 months, unless legal or administrative proceedings have been initiated during that period.***

32 C.F.R. § 199.9(h)(1)(vi) (emphasis added). The only exception is if legal or administrative proceedings have been initiated during the 18-month period. *Id.* As DHA admits, no legal or administrative proceedings have been initiated against Central Rexall. (Def.'s Br. At 7-9.)

As DHA has no discretion in the matter, Central Rexall has a clear right to relief. When a legal or regulatory requirement imposes a clear duty on an agency, the legal or regulatory requirement gives an affected party a corresponding right to

demand the agency's compliance. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016). It is "elementary that an agency must adhere to its own rules and regulations." *Texas v. United States Envtl. Prot. Agency*, 829 F.3d 405, 430 (5th Cir. 2016) (*quoting Reuters Ltd. v. F.C.C.*, 781 F.2d 946, 950–51 (D.C. Cir. 1986)). "Ad hoc departures from those rules, even to achieve laudable aims, cannot be sanctioned." *Id.*

DHA, in its Motion to Dismiss, makes a variety of arguments as to why there is no clear right to relief and no duty to act. The first of these is that "the regulations do not dictate that such proceedings must be made directly against the suspended party." (Def.'s Br. at 7.) Under this tortured interpretation, however, a temporary suspension could be justified by a legal or administrative proceeding initiated against *any* other person or entity, however tangentially removed from the suspended party that entity might be. Such a reading would completely vitiate any time limitations set forth in 32 C.F.R. § 199.9(h)(1)(vi)(A) and render it superfluous, as DHA presumably has legal or administrative proceedings pending against some person or entity at all times. Fundamental principles of statutory interpretation hold that "statutory terms" should not be treated as "surplusage." *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788 (2011). It is "an elementary canon of construction: that a statute should be interpreted so as not to render one part inoperative." *Mississippi Poultry Ass'n, Inc. v. Madigan*, 31 F.3d

293, 304 (5th Cir. 1994) (citing *Dep't of Revenue of Oregon v. ACF Indus., Inc.*, 510

U.S. 332, 333 (1994)).  Accordingly, DHA's interpretation of the regulations, that it

can suspend processing of payments to any provider for as long as it wants, cannot

stand.

DHA next attempts to tie the Department of Justice's proceedings against Dr.

Elder-Quintana to Central Rexall, contending, with improper citation, that he is an

"associated" physician of Central Rexall.   DHA cites to paragraph 17 of the

Complaint, which states in reference to Dr. Elder-Quintana: "Dr. Elder-Quintana has

never been directly affiliated with Central Rexall, but instead is merely one

physician—among hundreds of others—who has sent prescriptions to Central Rexall

in the past."  Compl. ¶ 17.  Indeed, Central Rexall has as much a relationship with

Dr. Elder-Quintana as the CVS pharmacy chain has with any prescribing physician

who sends prescriptions to that pharmacy on behalf of a patient/customer of CVS.

Further, the indictment of Dr. Elder-Quintana is solely based on his relationship with

other compounding pharmacies, not Central Rexall.  *See* Exhibit A (indictment

against Dr. Elder-Quintana, which involves four separate compounding pharmacies

but contains no mention of Central Rexall).  And, perhaps most importantly, the

extended suspension at issue is unlawful regardless of whether or not Dr. Elder-

Quintana is in any way associated with Central Rexall, as the regulations do not state

that the legal or administrative proceedings can be against some "associated" person

or entity.  That would simply beg the question as to what type of relationship would satisfy the hypothetical "association" standard.  Such a standard cannot simply be read into the regulations, which are plain on their face.

DHA's interpretation also makes no sense when considered within the larger scope of the regulatory scheme.  A party subjected to legal or administrative proceedings has the ability to object or pursue remedies within those legal or administrative proceedings, which take place before a neutral third party.  Thus, it makes perfect sense for a temporary suspension to continue under those circumstances where the suspended party has further avenues of relief.  Central Rexall is not a party to or in any way related to the Dr. Elder-Quintana proceedings, therefore it has no ability to obtain relief through those proceedings.  Rather, as explored further below, the mandamus petition is Central Rexall's sole remedy.

Next, DHA relies heavily upon *Helfgott v. United States* for the proposition that it has discretion to continue the temporary suspension.  891 F. Supp. 327, 329 (S.D. Miss. 1994).  *Helfgott* is inapposite for several reasons, most notably that it does not interpret the regulations at issue here, but rather Department of Veteran's Affairs regulations in effect at the time.  In that case, plaintiff Helfgott sued the Department of Veteran's affairs for mandamus relief, requesting that the court "compel the VA to 'discharge [its] duties to Plaintiff regarding his claim' and 'a judgment in Plaintiff's favor . . . 'awarding Plaintiff the VA benefits to which she and

13

her husband . . . are entitled.'" *Id.* at 329. Because the Plaintiff requested a declaratory judgment, it is unsurprising that the court refused mandamus relief, holding:

> The plaintiff is **not** requesting this Court to order the VA to perform **a ministerial duty such as accepting a claim, reviewing a claim, or processing a claim**. Instead, the plaintiff seeks to obtain from this Court an order that the VA alter its decision that Mr. Helfgott's claim is not warranted at present, as well as its decision to defer a final determination on the claim until a pending appeal involving § 1151 is decided.

*Id.* at 330 (emphasis added). The relief sought by Central Rexall in this case is precisely the type of relief that the court in *Helfgott* suggested *would* be appropriate for a writ of mandamus.

A second and perhaps even more crucial distinction is that the regulations at issue in *Helfgott* did not contain a regulatory deadline similar to the one contained in the DHA regulations at issue in this case. In fact, the court in *Helfgott* expressly stated that "the plaintiffs have not identified any statute, regulation, or judicial precedent that clearly limits the time within which the VA must issue a final decision on the plaintiff's claim." *Id.* at 331. In the case at hand, 32 C.F.R. § 199.9(h)(1)(vi)(A) clearly and expressly limits the length of a temporary suspension: "*[i]n no event* may a suspension extend beyond 18 months, unless legal or administrative proceedings have been initiated during that period." Accordingly, the holding in *Helfgott* actually supports Central Rexall's position in this case.

14

Finally, in support of its argument that it can extend this temporary suspension past the eighteen-month deadline, DHA cites to 32 C.F.R. § 199.9(h)(1)(i), which governs when DHA may *initiate* a temporary suspension.  However, Central Rexall is not currently disputing the initiation of the temporary suspension at issue.  Instead, it is disputing only the length of the suspension, which is expressly limited by Section 199.9(h)(1)(vi)(A).  Accordingly, this argument by DHA is another red herring.

For these reasons, and despite DHA's arguments to the contrary, Central Rexall meets the first two requirements for a writ of mandamus, as it has a clear right to relief and DHA has a clear duty to act.

### 2.    Central Rexall has No Adequate Alternative Remedy

Mandamus should be granted because it serves as Central Rexall's "exclusive vehicle to seek relief" and no "[o]ther means for review are available."  *In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014).

### a.    No Adequate Administrative Process Exists

The Supreme Court has explained that the requirement that a plaintiff have "no adequate remedy" is "a condition designed to ensure that the writ [of mandamus] will not be used as a substitute for the regular appeals process."  *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004).  To satisfy this requirement, a plaintiff needs to show that the usual appeals process does not provide an effective means to relief.  *See In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 288 (5th Cir.), *cert.*

*denied sub nom. Pearl Seas Cruises, LLC v. Lloyd's Register N. Am., Inc.*, 136 S. Ct. 64 (2015). Here, Central Rexall has no access to any administrative appeal process by which it may challenge DHA's continuation of the temporary suspension period beyond the 18-month maximum.

DHA disingenuously contends that "adequate relief is available to Plaintiff through the administrative remedies provided by the CHAMPUS regulations." (Def.'s Br. at 11 (citing 32 C.F.R. § 199.10).) In reality, Central Rexall has already sought a remedy under 32 C.F.R. § 199.10. DHA denied that there was any right to appeal, stating "[a]t this time, there has been no final adverse determination and, accordingly, no issue ripe for appeal." Compl., Ex. 11.[4] This ruling essentially confirmed the regulatory limbo in which DHA has placed Central Rexall—that because the claims were temporarily suspended and no final adverse determination had been made, DHA would not allow it to be appealed pursuant to Section 199.10, while simultaneously continuing the "temporary" suspension indefinitely. Thus, by DHA's own admission, Central Rexall has no avenue to appeal the temporary suspension. Until the claims are adjudicated (which can only occur after the temporary suspension is lifted), Central Rexall has no right to appeal. *C.f. Wolcott I,*

---

[4] The Court may consider documents that are attached to or incorporated in Central Rexall's Complaint that are central to the claim for relief in deciding a motion to dismiss. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

635 F.3d at 770 (mandamus jurisdiction is appropriate and there is no adequate alternative remedy where plaintiff had no new initial determination to appeal within the agency).

    b.  <u>The U.S. Court of Federal Claims Does Not Have Jurisdiction</u>

DHA also contends that "adequate relief exists for Plaintiff's claim in the United States Court of Federal Claims." (Def.'s Br. at 11.) Under 28 U.S.C. § 1491, known as the Tucker and Little Tucker Acts, the Court of Federal Claims has "jurisdiction over claims for *money damages* against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *White Oak Realty, LLC v. United States Army Corp of Eng'rs*, No. CV 13-4761, 2016 WL 355485, at *3 (E.D. La. Jan. 28, 2016) (emphasis added; internal quotations omitted). The Tucker and Little Tucker Acts have "long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States." *Id.* (quoting *Richardson v. Morris*, 93 S. Ct. 629, 631 (1973)). Because Central Rexall is not asserting a claim for money damages against the United States but is instead asserting a claim for equitable relief, Section 1491 does not provide jurisdiction in the Court of Federal Claims.

The only case cited by DHA for the proposition that the Court of Federal Claims is an alternative adequate remedy is *Carter v. Seamans*, 411 F.2d 767 (5th Cir. 1969). In that case, the plaintiff requested a declaratory judgement that his discharge from the military was illegal and sought monetary relief in the form of back pay. The Fifth Circuit held that "a decision by this court concerning the validity of the discharge necessarily involves an adjudication of the claim for back wages." *Id.* at 771. It therefore declined jurisdiction because "if this court were to find for Plaintiff it would be deciding indirectly a claim over which the Court of Claims has exclusive jurisdiction." *Id.* at 775. Notably, the Fifth Circuit also explicitly stated that had the monetary damages claim not been before the court, mandamus jurisdiction would have been appropriate. *Id.* at 772.

Unlike the plaintiff in *Carter*, who requested the court evaluate the underlying merits of his discharge in order to find he was owed back pay, Central Rexall is not asking this Court to evaluate the merits of the underlying claims that would entitle it to payment. Central Rexall is simply requesting that this Court require DHA to abide by the plain language of its own regulations and lift the temporary suspension so that the suspended claims can be processed. Because this action does not contain a request for monetary relief or require this Court to evaluate the merits of the underlying claims, it is not under the jurisdiction of the Court of Federal Claims, and that court cannot provide an adequate remedy. Further, it is simply not the law in the

Fifth Circuit that claims such as Central Rexall's must be brought there. *C.f. Wolcott I,* 635 F.3d at 770 (finding mandamus jurisdiction appropriate and no adequate alternative remedy where Medicare contractor refused to pay a successfully appealed claim valued at over $700,000). Thus, Central Rexall has no adequate alternative remedy and a writ of mandamus by the Court is appropriate.

### C. Central Rexall has Stated a Claim for the Court to Exercise Discretion and Grant Relief

Whether to grant a writ of mandamus is in the court's discretion. *Wolcott I,* 635 F.3d at 768. Based on the circumstances of this case as explained above, this is precisely the type of situation that a writ of mandamus was designed to address. Under the plain language of its own regulations, DHA was required to either initiate administrative or legal proceedings against Central Rexall, or end its temporary suspension, no later than eighteen months after the suspension was first initiated. DHA has failed to follow these clear and unambiguous mandates. Such blatant disregard by a government agency not only leaves Central Rexall with no remedy short of a writ issued by this Court, but also violates the vital public interest in having agencies follow their own regulations.

Central Rexall has attempted to resolve this dispute within DHA, but DHA rejected this attempt, informing Central Rexall that it has no internal avenue to appeal the temporary suspension, thereby leaving Central Rexall in a state of limbo that has caused it extreme harm. DHA has suspended the processing of over $20 million

worth of the claims, and the resulting impact on Central Rexall has been devastating. (Compl. ¶ 14.)   After 120 years of operation, Central Rexall was forced to cease operations because it could no longer continue as a going concern with so many payments outstanding, forcing Central Rexall to abandon both its patients and its numerous employees.[5]   *Id.*

Such facts create a situation tailor-made for the exercise of this Court's discretion and the issuance of the equitable relief sought.  The District Court for the District of Columbia decided a similar case in *In re Medicare Reimbursement Litigation*, 309 F. Supp. 2d 89 (D.D.C. 2004), aff'd, 414 F.3d 7 (D.C. Cir. 2005).  In that case, a hospital sued the Department of Health and Human Services to compel the agency to reopen final payment decisions per mandatory reopening provisions. The court found that the three elements of mandamus had been met, and determined that the equities warranted the imposition of the writ.   It held that "the [HHS] Secretary's compliance with applicable law constitutes a separate, compelling public interest" and that any potential administrative burden on the agency "does not outweigh the public's substantial interest in the [HHS] Secretary's following the law." *Id.* at 99.  The D.C. Circuit affirmed on appeal. *In re Medicare Reimbursement*

---

[5] DHA contends that Central Rexall's closure is unrelated to DHA's actions.  (Def.'s Br. at 14).  This is not the case.  Central Rexall shut down in December 2016, two months after the "temporary" suspension was due to be lifted.  The closure was caused by the inability to keep operating with $20 million in claims outstanding.

*Litig.*, 414 F.3d 7 (D.C. Cir. 2005). The panel approved of the District Court's opinion and added that the fact reopening the claims had the potential of costing the HHS more than $1 billion, did not weigh in favor of denying the writ as "Congress imposed on the Secretary a clear statutory duty to pay the hospitals these funds. Having to pay a sum one owes can hardly amount to an equitable reason for not requiring payment." *Id.* at 13.

DHA's sole argument regarding the equities is that their "delay" in this case is "reasonable" compared to other cases. But again, DHA's arguments are irrelevant because the issue is not whether their delay is reasonable; it is whether or not DHA complied with the unambiguous regulatory deadline. The cases cited by DHA all concern regulatory schemes that did not contain bright-line deadlines such as the one at issue here. As discussed above, the regulations at issue in *Helfgot* contained no provision "that clearly limits the time within which the VA must issue a final decision on the plaintiff's claim." *Helfgot,* 891 F. Supp. at 331. The regulations at issue in *In re Monroe Communications Corporation*, 840 F.2d 942, 945 (D.C. Cir. 1988) "establishe[d] as an 'objective' the issue of a final decision within six months of the close of the initial hearing", and that ninety days "should be clearly sufficient to act on any petition for rehearing." Such language merely establishes ideal timelines for resolution, not bright-line mandates. In contrast, 32 C.F.R. § 199.9(h)(1)(vi)(A)

establishes an unequivocal bright-line, that prohibits a temporary suspension beyond eighteen months except under narrow circumstances not present here.[6]

DHA's flagrant refusal to follow its own regulations has caused great harm to Central Rexall and also to the vital public interest in having agencies follow their own regulations. Accordingly, Central Rexall has stated a claim for the Court to exercise its discretion.

## IV.    CONCLUSION

DHA has failed to show that dismissal is appropriate. This Court has mandamus jurisdiction, Central Rexall has stated a claim for mandamus relief, and Central Rexall has shown that the equities compel a writ of mandamus. For the foregoing reasons, Plaintiff Central Rexall respectfully requests that the Court deny Defendant Director of the Defense Health Agency, Raquel Bono's Motion to Dismiss.

---

[6] The last case cited by DHA, is similarly unavailing. *Lundy v. Dep't of Veterans Affairs*, 142 F. Supp. 2d 776, 780 (W.D. La. 2001). Unlike *In re Medicare Reimbursement Litigation*, which similarly dealt with payments to Medicare providers, *Lundy* concerned a FOIA request where the plaintiff argued the search had not been sufficient. The *Lundy* court was not presented with the issue of a writ of mandamus, and only mentioned extraordinary circumstances in dicta without providing any explanation for why the extraordinary circumstances were not present in that case. In contrast, the court in *In re Medicare Reimbursement Litigation* explained in detail why extraordinary circumstances were met, under facts very similar to the ones at hand. *In re Medicare Reimbursement Litig.*, 309 F. Supp. 2d at 91.

Respectfully submitted this 25th day of July, 2017,

*/s/ Scott R. Grubman*
Scott R. Grubman
Ga. Bar No. 317011

**CHILIVIS, COCHRAN, LARKINS & BEVER, LLP**

3127 Maple Drive, N.E.
Atlanta, GA 30305
404-233-4171 (phone)
404-261-2842 (fax)
sgrubman@cclblaw.com
*Attorney for Plaintiff Central Rexall*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 25th day of July, 2017, the foregoing Memorandum in Opposition of Defendant DHA's Motion to Dismiss was filed electronically with the Court via the CM/ECF System, which automatically sends a service copy via e-mail notification upon counsel of record.

/s/ Scott R. Grubman
Scott R. Grubman
Ga. Bar No. 317011

**CHILIVIS, COCHRAN, LARKINS & BEVER, LLP**

3127 Maple Drive, N.E.
Atlanta, GA 30305
404-233-4171 (phone)
404-261-2842 (fax)
sgrubman@cclblaw.com
*Attorney for Plaintiff Central Rexall*