**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **CENTRAL REXALL DRUGS, INC.** | * | **CIVIL ACTION** |
| **v.** | * | **NUMBER: 17-2724** |
| **RAQUEL C. BONO, DIRECTOR DEFENSE HEALTH AGENCY** | * | **JUDGE BARBIER** |
| | * | **MAG. JUDGE KNOWLES** |

* * *

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' REQUEST
FOR PRELIMINARY INJUNCTION AND ATTORNEY'S FEES**

**MAY IT PLEASE THE COURT:**

INTRODUCTION AND OVERVIEW

Nearly two years ago Plaintiff, Central Rexall Drugs (hereinafter "Plaintiff" or "Central Rexall"), filed a complaint seeking a writ of mandamus against the Defendant, Vice Admiral Raquel C. Bono, Director of the Defense Health Agency (hereinafter, "the Director"), to compel her to process claims Plaintiff had submitted to TRICARE for payment. The Director moved for dismissal for lack of jurisdiction, which motion was taken under submission in late August, 2017. In the interim since then, the Director undertook an audit of all claims Central Rexall had submitted over several years, including those for which it had already been paid by TRICARE, as well as those pending at the time the suspension had been imposed. The audit found that Central Rexall had submitted tens of millions of dollars of claims for compound skin care cream prescriptions that had been issued without evidence of a genuine doctor-patient relationship.

Now Central Rexall has changed gears and is asking this Court to enjoin the Director from processing and seeking recoupment for those claims described above which were submitted under

1

fraudulent or abusive circumstances. As with Plaintiff's mandamus request, the Director will show that Central Rexall cannot meet the legal standard for the imposition of injunctive relief and, as before, that the lawsuit should be dismissed for lack of jurisdiction.

## PROCEDURAL RECAP

On March 30, 2017, Central Rexall filed the above-captioned suit seeking a writ of mandamus from this Court forcing the Director of the Defense Health Agency (hereinafter, "DHA"), to lift a temporary suspension and compel the processing and payment of claims amounting to tens of millions of dollars by TRICARE for compound skin cream prescriptions Plaintiff had filled. Record Doc. # 1, p. 5 at ¶ 13. The suspension had been imposed and extended because the Director had received information that Central Rexall had been submitting claims involving practices that may have constituted fraud or abuse, per 32 C.F.R. § 199.9(h)(1)(ii). The gravamen of Central Rexall's complaint was that the Director had imposed a suspension that exceeded the time authorized under 32 C.F.R. § 199.9(h)(1)(vi)(A). Record Doc. # 1, p. 4 at ¶ 9.

In response to the lawsuit, on July 7, 2017, the Director moved to dismiss for lack of jurisdiction under the Mandamus Act. Record Doc. # 8. The Director's motion demonstrated that it was within her discretion to extend the suspension of claims processing even beyond 18 months when legal or administrative proceedings related to the claims have been initiated during the 18 month period, in order to prevent the CHAMPUS/TRICARE program from being defrauded or abused. Id. at pp. 7-10. The motion pointed to the Director's correspondence extending the suspension which referenced ongoing criminal proceedings involving Dr. Elder-Quintana, a provider who had issued many of the compound skin cream prescriptions that were filled and submitted for payment to TRICARE by Central Rexall. Id. The motion further showed that other adequate relief was available to Central Rexall, namely an appeal to the Court of Federal Claims,

once it had exhausted the administrative review provided under the CHAMPUS regulations. Id. at pp. 11-13. Thus, the Director argued that as there was no basis for mandamus to issue, the Court lacked jurisdiction over the lawsuit.

In opposition to the motion, Plaintiff chiefly asserted that the legal or administrative proceedings referenced in Section 199.9(h)(1)(ii), had to be against the provider being suspended, i.e., Central Rexall. Record Doc. # 10 at p. 4 ("That eighteen-month deadline expired in October 2016 and, to date, DHA has still not initiated any legal or administrative actions against Central Rexall. [Compl. ¶¶ 10-11.] Accordingly, DHA should be required to lift the suspension and begin processing payments to Central Rexall immediately."). In response, Defendant pointed out that unlike Section 199.9(f) and (g), which pertained to suspending wayward providers themselves, Section 199.9(h) authorized the imposition of a suspension and the extension of same, relative to claims. Record Doc. # 16 at pp. 7-8. Thus, extension of a suspension of processing and payment of claims, could be authorized even if the administrative or legal proceedings in question were against an affiliate of the entity submitting the suspect claims. The Director's reply drew upon an analogous case involving nearly identical regulations issued under the government's contracting system ("FARS"). Id. at pp. 12-13. After allowing Plaintiff a sur-reply, Record Doc. # 20, the Court took the motion under submission on September 13, 2017.

Over a year later, Central Rexall has changed gears and now moves this Court to enjoin the Director from doing the very thing Plaintiff demanded in its mandamus complaint—processing its claims. Record Doc. #21. Plaintiff's motion for a preliminary injunction seeks to "maintain the status quo" and prevent DHA from trying to recoup and collect for claims that have been determined to be fraudulent and an abuse of the TRICARE program. Id.

3

RELEVANT STATUTORY/REGULATORY AND FACTUAL[1] BACKGROUND

The TRICARE Program is a federal statutory entitlement program for active duty uniformed services members, retirees, and their dependents, which authorizes the Secretary of Defense to provide a uniform program of medical benefits. Title 10, United States Code (U.S.C.), (hereinafter "the Statute") Sections 1071 and 1073(b). The TRICARE Program is administered and implemented through the Code of Federal Regulations, Title 32, Code of Federal Regulation (C.F.R.), Section 199 (hereinafter "the Regulation"). 10 U.S.C. § 1073(a). The TRICARE Policy Manual, 6010.57-M, provides guidance, benefit policy interpretation and decisions implementing TRICARE, and is used in conjunction with the TRICARE Reimbursement Manual, 6010.58-M, and the Regulation. Benefit policy applies to the scope of services and items which may be considered for cost-sharing/reimbursement by the TRICARE program within the intent of the Regulation. Per 32 CFR 199.4(a)(1)(i), benefits include specified medical services and supplies provided to eligible beneficiaries from "authorized providers." In addition, according to 32 CFR 199.6(a)(7), in order to be considered for benefits, all services and supplies shall be rendered by a CHAMPUS authorized provider practicing within the scope of his or her license.

---

[1] To the extent the ensuing discussion relies on facts outside the record, the Director relies upon the Declaration of James Gogue and the documentation appended thereto and attached to this Opposition as Exhibit 1, *in globo*. As the Director is reiterating the assertion in her pending motion to dismiss that the Court is without jurisdiction over Plaintiff's lawsuit, the Court may decide the matter on one of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or, (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming*, *supra* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The existence of disputed material facts will not preclude the court from evaluation of the merits of the jurisdictional claims, and the court may look beyond the pleadings to affidavits and exhibits to determine whether it has jurisdiction over a dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (holding jurisdictional issues are for the court, not the jury to decide, regardless of whether they are based on legal or factual determinations). In determining whether it is properly vested with subject matter jurisdiction, the district court is "'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

Based on the volume of claims Plaintiff submitted for prescriptions it filled from physicians for patients/beneficiaries who were in different states, Central Rexall was identified as one of a number of compounding pharmacies receiving TRICARE payments for medically unnecessary compound drugs. According to 32 CFR 199.4, Basic Program Benefits, and subject to all applicable definitions, conditions, limitations, or exclusions specified in the Regulation, TRICARE will only pay for medically necessary services and supplies required in the diagnosis and treatment of illness or injury, and provided by authorized providers.

On April 24, 2015, by authority of 32 CFR 199.9(h), DHA issued a suspension of claim payment processing notice to Central Rexall because Plaintiff was identified as allegedly having dispensed compound drugs to TRICARE beneficiaries written by prescribers who may not have established a prescriber-patient relationship with beneficiaries necessary to write valid, medically necessary prescriptions. The initial period of suspension was to have been for up to 12 months, which could be extended for an additional 6 months pending action by the Department of Justice ("DOJ"). Absent intervention by DOJ at the end of the 18 months the suspension by DHA would be reviewed to determine if there was reasonable evidence to establish that the suspension would continue. See Attachment A to Gogue Declaration, Letter of Central Rexall Suspension dated April 24, 2015.

On May 20, 2015, Plaintiff submitted a written argument to the DHA opposing the temporary suspension. See Exhibit 2 to the Complaint (Record Doc. 1-2). Plaintiff also sought and presented its argument in person to the DHA's Office of Program Integrity. See Record Doc. 1-6 at p. 21. However, the DHA found that neither of these arguments raised a genuine dispute of material facts challenging the basis for the claims suspension. Id. On December 2, 2015, DHA sent Plaintiff a suspending official's decision in which the DHA informed Plaintiff that its claims suspension was

5

still in effect and that Plaintiff and its associated physicians were being audited. Id. at p. 22.

The DHA's audit of Plaintiff's claims revealed that over $37 million in claims submitted by Central Rexall had "no substantiating medical claims submitted to support that a valid doctor/patient relationship existed." See Exhibit 10 to Complaint at p. 2 (Record Doc. #1-10). Further, one physician associated with the suspect prescriptions that Central Rexall filled, Dr. William Elder-Quintana, was arrested on October 12, 2016 after being indicted for fraudulently prescribing compounded drugs to TRICARE beneficiaries. Id. The DHA also found that a large volume of the compounding prescriptions submitted by Plaintiff were based on prescriptions written by Dr. Elder-Quintana. Id. at p. 3. Plaintiff was made aware of both of these facts in an October 21, 2016 letter in which the DHA informed Central Rexall that its temporary suspension would continue until the completion of Dr. Elder-Quintana's prosecution by the Department of Justice. See Attachment B to Gogue Declaration, Continuation of Suspension Letter dated October 21, 2016.

On May 16, 2017, as a matter of routine administrative actions to ascertain the validity and correctness of claims or possible fraudulent submissions to TRICARE, the DHA instructed TRICARE pharmacy benefit contractor Express Scripts, Inc. (ESI), to conduct an audit of Central Rexall claim submissions to TRICARE from January 1, 2012, to May 15, 2017. The audit identified 6,448 Central Rexall claims during the audit period showing compound drug prescription claims which were not valid and not medically necessary because the prescription claims did not have a matching prescriber-patient medical claim (Prescriber/Patient Non-Matching). The total costs of these invalid, medically unnecessary claims is $37,137,031.03. See Attachment C to Gogue Declaration, Central Rexall Audit dated May 16, 2017.

On July 10, 2017, DHA Program Integrity requested action through the DHA Pharmacy Operations Division (DHA-POD) to instruct ESI to begin recoupment, denial or offset of the over

6

$37.1 million in invalid, medically unnecessary claims. Some of these invalid claims had already been paid prior to the initiation of the instant lawsuit, while other of these invalid claims had not been paid due to the suspension of processing/payment imposed by the Director upon Central Rexall's claims in April 2015. Thus, contemporaneously, many of the claims identified as invalid were the subject of the above captioned lawsuit pursuing a Writ of Mandamus requiring the government to process the previously suspended claims. See Attachment D to Gogue Declaration, Request to DHA-POD for Central Rexall Recoupment dated July 10, 2017.

ESI as DHA's contractor sought recoupment for all previously paid claims for compound prescription skin cream which ESI determined were fraudulent, i.e., that were now deemed overpayments. Said recoupment action was taken initially by offsetting the invalidly paid claims against all pending unpaid claims which ESI determined were valid and which were subject to the claim processing suspension about which Plaintiff originally complained. ESI also denied all pending unpaid claims which it determined were fraudulent. Thus all pending claims which previously were subject to the claim processing suspension that was the subject of Plaintiff's original complaint had, in fact, been processed prior to the time Plaintiff filed its preliminary injunction motion on October 2, 2018.

ESI then sought reimbursement for the balance of the recoupment claims it had determined were not medically necessary in four letters addressed to Central Rexall, to wit:

(a) November 12, 2017 seeking $14,522,674.49 in alleged overpayments;

(b) November 12, 2017 seeking $922,500.88 in alleged overpayments;

(c) November 26, 2017 seeking $992,334.49 in alleged overpayments; and

(d) November 26, 2017 seeking $64,491.45 in alleged overpayments.

See Record Doc. # 21-5 at p. 2. Each letter informed Central Rexall that it had the right to inspect

and copy all records pertaining to the above-listed debts and that if it believed that ESI's determination regarding TRICARE coverage is incorrect or disputed the amount of the debt as calculated in the letters, that it had the right to request an administrative review of the indebtedness, which review included a right to an Administrative Review under 32 C.F.R. 199.11, and Reconsideration under 32 C.F.R. 199.10.  See Attachment E to Gogue Declaration, Central Rexall Recoupment Document dated November 26, 2017, at page 2, paragraph 5, as an example of the notice of administrative review rights Central Rexall was advised it could exercise.  Each recoupment letter to Central Rexall contains this statement of the right to administrative review.

However, Central Rexall apparently requested Reconsideration of all four recoupment/overpayment demands listed above in a letter dated February 9, 2018 (Record Doc. # 21-5), which letter was evidently misplaced after it was received by ESI's mailbox courier.  Because Central Rexall's February 9, 2018 letter was mislaid, ESI did not carry out the administrative review sought by same.  Instead, in letters dated April 19, 2018, ESI issued demands for payment of the overpayment amounts that had not been offset by other, valid TRICARE claims from Central Rexall.  See Record Doc. ## 21-6 and 21-7.  These collection attempts were followed by DHA billing notices and, eventually by dunning notices issued by an outside collections contractor (CBE Group).

Thus, the first occasion that DHA or its pharmacy benefit contractor, ESI, took notice that Central Rexall had requested reconsideration was when Plaintiff filed the subject motion for preliminary injunction on October 2, 2018.  Thus, subsequent to the filing of Plaintiff's preliminary injunction motion, DHA instructed  CBE Group to refrain from any further efforts to collect the overpayment debt from Central Rexall.

DISCUSSION

**Plaintiff Cannot Make the Requisite Showing for Injunctory Relief to Issue**

Assuming, *arguendo*, that this Court has jurisdiction[2] and may, therefore, grant injunctory relief, Plaintiffs' motion still fails to meet the burden of proving their circumstances meet the four-prong test for granting such an extraordinary remedy. Canal Authority of State of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir.1974). To secure a preliminary injunction, a plaintiff must demonstrate "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of the injunction will not disserve the public interest." Maxmed Healthcare, Inc. v. Burwell, 14—CV—988 reported at 2015 WL 1310567 *2 (W.D. Texas March 23, 2015), citing Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir.2011) (quoting Bynum v. Landreth, 566 F.3d 442, 445 (5th Cir.2009)). Injunctive relief is "an extraordinary and drastic remedy"; it should only be granted when the movant has clearly carried the burden of persuasion. Anderson v. Jackson, 556 F.3d 351, 360 (5th Cir.2009) (internal quotation marks omitted) (quoting Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir.1985)).

For Central Rexall to succeed it must demonstrate that this extraordinary remedy is necessary, and otherwise satisfy all four requirements. A failure to establish any one of the four factors requires a denial of the preliminary injunction. Mississippi Power & Light Co., 760 F.2d 618, 621 (5th Cir.

---

[2] As the Director's motion to dismiss for lack of subject matter jurisdiction is still pending, the following arguments against the grant of injunctive relief are offered without waiving the arguments previously presented to this Court. In fact, the asserted lack of subject matter jurisdiction constitutes an additional ground for concluding that Plaintiff does not have a substantial likelihood of success on the merits. See generally, Monumental Task Comm., Inc. v. Foxx, 157 F. Supp. 3d 573, 585 (E.D. La. 2016), aff'd sub nom. Monumental Task Comm., Inc. v. Chao, 678 F. App'x 250 (5th Cir. 2017); Riley v. Louisiana State Bar Ass'n, No. CIV. A. 09-7710, 2009 WL 5171575, at *1 (E.D. La. Dec. 17, 2009)("Riley has not demonstrated a substantial likelihood of success on the merits because it is not clear that the Court has jurisdiction over his claims").

.

1985). As demonstrated below, Central Rexall cannot satisfy this test.

    1.    <u>Plaintiffs Do Not Have a Substantial Likelihood of Success on the Merits.</u>

In order to determine the likelihood of success on the merits, the court looks to the standards provided by substantive law. <u>Valley v. Rapides Parish Sch. Bd.</u>, 118 F.3d 1047 (5th Cir. 1997). The Plaintiff's likelihood of success on the merits is "a strong factor to be weighed by the Court upon the hearing for the preliminary injunction." <u>Am. Granwood Flooring Co. v. McIntyre Veneers, Inc.</u>, 264 F.Supp. 4, 6 (E.D. La. 1967). As one court explained, "the *sine qua non* of four-part inquiry into whether to grant preliminary injunction is likelihood of success on the merits." <u>New Comm Wireless Servs., Inc v. SprintCom, Inc.</u>, 287 F.3d 1, 9 (1st Cir. 2002). "If the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." <u>Id.</u>

Plaintiff in this instance cannot show a likelihood of success on the merits for the following reasons. First, Central Rexall has not exhausted the administrative remedy available to it under 32 C.F.R. § 199.10. <u>See</u> Record Doc. # 8-1 at pp. 11-13. In fact, DHA acknowledges[3] that Central Rexall was deprived of administrative review of the decision to begin recoupment of claims deemed invalid that were already paid, as well as the offset or denial of those valid or invalid claims respectively, that were pending processing at the time the Director imposed the suspension. Even assuming that Central Rexall had exhausted the review process, this Court is not the correct one to review its appeal—only the Court of Federal Claims is so authorized. <u>See</u> Record Doc. # 8-1 at pp. 11-12.

Moreover, Central Rexall has not demonstrated that the Director has exceeded her discretion

---

[3] <u>See</u> Gogue Declaration, ¶¶ 15-16. Moreover, DHA has committed in writing to providing Central Rexall with the administrative review to ensue within 10 days of the dismissal of this lawsuit, and in winding the clock back to reconsideration, has called off any and all collection efforts. <u>Id.</u> at ¶¶ 19 and 21.

by extending the suspension of processing until DHA's contractor, ESI, could complete its audit of the claims which determined that over $37 million worth were not the product of a valid physician-patient relationship.[4] In fact, DHA was under no obligation to maintain the *status quo* pending disposition of this case as demonstrated in these Medicare cases. In Greigo v. Leavitt, No. 3:07—CV—1708—D, reported at 2008 WL 2200052 at *11-12 (N.D. Tex. 2008), the Plaintiff doctor's assertion that the Secretary's ongoing efforts to recoup $487,708.19 in Medicare overpayments would shut down his clinic was deemed insufficient to warrant enjoining same while plaintiff's lawsuit seeking reconsideration of the Secretary's overpayment determination proceeded. Noting that Dr. Griego had not properly exhausted his claim, the court found that any recoupment made before the administrative process had been properly exhausted would simply be deemed a "past injury" for which money damages would adequately remedy. Id.[5] See also Texas Medical Ent., Inc. v. Sebelius, Civ Action No. 9:13:CV27 reported at 2013 WL 3215760 *3-4 (E.D. Tex. June 24, 2013)(suspension of claims during appeals process not subject to enjoinder even if provider might go out of business).

Similar to the provisions in the Medicare program, the CHAMPUS regulations state that, "temporary suspension of claims processing may be invoked . . . *for a period reasonably necessary* to complete investigation or appropriate criminal, civil, and administrative proceedings." 32 C.F.R. § 199.9(h)(1)(i)(emphasis added). Further, "once it has been *determined appropriate* to end the temporary suspension of claims processing, CHAMPUS claims which were the subject of suspension . . . ***will be processed to completion and payment***." *Id.* (emphasis added). Thus, the Director was within her authority to lift the suspension and take the recoupment/offset/denial actions that are the

---

[4] Thus, no jurisdiction may be founded upon the Mandamus Act. See Record Doc. #8-2 at pp 8-9.
[5] Except that unlike Medicare/Medicaid cases, review following administrative exhaustion, is not in district court. Griego, supra citing 42 U.S.C. 405(h).

subject of Plaintiff's motion.

Hence, as Plaintiff cannot demonstrate it will likely succeed on the merits of its claim, Central Rexall is not entitled to injunctive relief.

2. Plaintiff Fails to Demonstrate Irreparable Harm.

Plaintiff's attempt to demonstrate irreparable harm falls well short of the mark. At page 14 in its memorandum in support, Central Rexall asserts Maximed Healthcare, supra, for the proposition that going out of business can be sufficient evidence of irreparable injury. 2015 WL 1310567 at *3. Plaintiff has already acknowledged, however, that it went out of business in December 2016, even before filing this lawsuit. See Record Doc. # 8-2 at p. 14 n. 5 as well as #21-1 at p. 4. Yet, Central Rexall's request for injunctive relief came nearly 2 years after it closed its doors.[6]

Further, Central Rexall cannot demonstrate irreparable harm because it's the harm it alleges can be cured by money damages. Irreparable injury is harm that "cannot be undone through monetary damages," that is, harm for which money damages are inadequate or for which money damages are "especially difficult" to compute. Deerfield Med. Ctr. v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir.1981); Allied Marketing Group, Inc. v. CDL Marketing, Inc., 878 F.2d 806, 810 n. 1 (5th Cir.1989). The "central inquiry in deciding whether there is a substantial threat of irreparable harm to the plaintiff is whether the plaintiff's injury could be compensated by money damages." Allied Marketing Group, Inc., 878 F.2d at 810 fn. 1.

There can be no irreparable injury where money damages would adequately compensate a plaintiff. DFW Metro Line Services v. Southwestern Bell, 901 F.2d 1267, 1269 (5th Cir.1990)

---

[6] See Griego, supra at 11 in which prior recoupment constitutes "past injury" which may not be considered when determining "irreparable harm." The opinion further relevantly concluded, "Assuming *arguendo* that exhausting Dr. Griego's administrative remedies would force him to shut down his health clinic, this harm would not constitute irreparable injury. "[E]ven if the Secretary's actions were to force a health care provider out of business, the injuries are not necessarily 'irreparable,' considering the risk known to the health care provider when it enters the Medicare program." Id.

12

(citations omitted). Simply arguing that a company is losing customers and goodwill without showing that monetary damages are an inadequate remedy is insufficient to establish irreparable harm. Johnson Controls, Inc. v. Guidry, 724 F. Supp. 2d 612, 619 (W.D. La. 2010), citing Millennium Restaurants Group, Incorporated v. City of Dallas, 181 F.Supp.2d 659, 666 (N.D.Tex.2001); Sun Water Systems, Inc. v. Vitasalus, Inc., 2007 WL 820280, *6 (N.D.Tex.2007).

Plaintiff's failure to demonstrate that it will be irreparably injured by the Director's recoupment actions, by itself, is sufficient to support the denial of a preliminary injunction. See Cityfed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995); St. Croix Chippewa Indians of Wis. v. Kempthorne, No. 07-cv-2210 (D.D.C. Feb. 21, 2008) ("[I]f a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors.")(quoting Dodd v. Fleming, 223 F.Supp.2d 15, 20 (D.D.C. 2002)); cf. Monumental Task Comm., 157 F. Supp. 3d at 583 ("Plaintiffs must show that 'irreparable injury is likely in the absence of an injunction.") quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (emphasis in original).

Because any harm in this instance can be remedied by money damages, Central Rexall's request for injunctory relief fails on this account, as well.

### 3. The Director's Mission to Avert Losses due to Fraud and Abuse Would Suffer Greater Harm from an Injunction and Disserve the Public Interest.

The threatened injury to the Plaintiff certainly does not outweigh the threatened harm to the mission of the Director, who is charged with overseeing the integrity of CHAMPUS/TRICARE and is given a broad mandate for ensuring compliance with its regulations. See 32 C.F.R. § 199.1(j). Part of that mandate includes protecting CHAMPUS/TRICARE (and the taxpayers) from losing money on fraudulent claims. See generally Section 199.9.

13

Plaintiff's motion (p. 14) focuses not only on the debt collection efforts, which came after DHA's recoupment/offset/denial actions, but asserts the real harm to it comes from "DHA's failure to process and pay the *proper* claims submitted by Central… ." Id. at p. 14 (emphasis added). Plaintiff then argues that Defendant "will suffer no harm" if these collection efforts are enjoined, especially since they will deplete whatever remains of Central's assets," if allowed to proceed. Id. at pp. 15-16. Plaintiff further asserts that the harm to it is disproportionate, especially since it is legal limbo without any means of disputing the debt determination or the suspension that led to this lawsuit. Id. at 16.

The Director submits that the granting of any injunction will impede her above-stated mission of protecting CHAMPUS/TRICARE—and the taxpaying public--from losses due to fraud and abuse. Moreover, as explained several times already, Plaintiff is entitled to administrative review, which the Director pledges will ensue within 10 days of the completion of this lawsuit. Following that, Central Rexall will have a full appeal to the Court of Federal Claims. Woods Psychiatric Inst. v. United States, 20 Cl. Ct. 324, 330 (1990); Green Hosp. v. United States, 23 Cl. Ct. 393, 399 (1991). Finally, because Plaintiff's claim far exceeds $10,000, only the Court of Federal Claims may entertain same under the Tucker Act. See 28 U.S.C. § 1346(a)(2). Thus, Central Rexall's arguments that it is in legal limbo and will be without a remedy do not withstand scrutiny.

Moreover, the fact is that Central Rexall is already a defunct entity whose officers are the only persons who stand to benefit from further suspension of the processing of claims—the very opposite of what Plaintiff originally sought when it filed this lawsuit when the possibility still existed that some monies, i.e., from its legitimate claims, might be remaindered to the business and its owners. Thus, the DHA's ability to recoup any of the money it already paid to Plaintiff for

invalid claims diminishes the longer any final denouement is postponed.

## CONCLUSION

For the reasons set forth both above, the Director prays that Plaintiff's motion for the imposition of a preliminary injunction on her recoupment actions be **DENIED**.

        Respectfully submitted,

        PETER G. STRASSER
        UNITED STATES ATTORNEY

        *s/Glenn K. Schreiber*
        GLENN K. SCHREIBER
        Assistant United States Attorney
        U.S. Attorney's Office (E.D. La.)
        650 Poydras Street, Suite 1600
        New Orleans, Louisiana 70130
        Telephone: (504) 680-3093
        Telefax: (504) 680-3174
        glenn.schreiber@usdoj.govv

## CERTIFICATE OF SERVICE

I hereby certify that on **February 19, 2019**, a copy of the foregoing **DEFENDANT'S OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION AND ATTORNEY'S FEES** was filed electronically with the Clerk of Court using the CM/ECF system.

        */s/ Glenn K. Schreiber*
        GLENN K. SCHREIBER
        Assistant United States Attorney